UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOSEPH MURPHY, et al.,

Plaintiff(s),

-against-

STUART SNYDER, et al.,

Defendant(s).
-------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 10-1513 (JS) (GRB)

**GARY R. BROWN, United States Magistrate Judge:**

The complaint in this diversity matter alleges causes of action for, *inter alia,* breach of contract, conversion, unjust enrichment, and fraudulent inducement stemming from plaintiffs' $375,000 investment in defendants' building projects. Although defendants initially answered the complaint and demonstrated an interest in defending the matter, plaintiffs were soon forced to seek the court's assistance in compelling discovery. When court orders and sanctions proved ineffective in securing defendants' cooperation, *see* Docket Entries ("DE") [34], [37] and [41], Magistrate Judge Wall recommended that defendants' answers be stricken and a default entered. *See* DE [40]. Judge Seybert adopted that recommendation, and referred the matter to Judge Wall for a determination of damages upon defendants' default. *See* DE [43]. The plaintiffs submitted their papers in support of damages, *see* DE [44], and the case was subsequently reassigned to the undersigned.

For the reasons set forth herein, it is recommended that judgment be entered against all defendants in the amount of $450,000, plus interest, and $350 in costs. The judgment should also include the previously awarded sanctions totaling an additional $2,713.00. Additional punitive damages of $37,500 against defendant Stuart Snyder are recommended.

**BACKGROUND**

In this action, plaintiffs seek recovery of $375,000 paid to the defendants "for use in connection with certain building projects." Amended Complaint, ¶2, DE [26]. The plaintiffs, Joseph Murphy and his wife, Nancy, are related to some of the defendants – specifically, Stuart and Doreen Snyder are Joseph Murphy's brother-in-law and sister, respectively. *Id.* ¶3. Joseph Murphy is a retired New York City Fire Department captain, and Stuart Snyder is in the custom home building business. *Id.* ¶¶ 35, 38. Stuart operates his business through several entities including defendants BBSea Associates, S&D Development, LLC, S&D Development, Inc., and S&D Contracting, Inc. (collectively, the "Companies"). *Id.* ¶¶40, 42. Stuart conducts his business with partners Michael Maisel and Neil Shirvan, also named as defendants in this action. *Id.* ¶¶45-48.

Upon his retirement from the Fire Department in 2005, Joseph Murphy approached Stuart Snyder "about getting involved in Stuart's business and/or the Companies." *Id.* ¶50. Stuart spoke with Joseph about an ongoing project involving the building of two homes in New Jersey (the "Haworth Project") and told Joseph that the Murphys could participate as "silent partners" by investing $100,000. *Id.* ¶¶51-53. The Snyders and the Companies purportedly guaranteed the return of the initial investment plus twenty percent in approximately one year. *Id.* ¶53. The Murphys accepted the proposal and entered into an agreement with the Snyders and the Companies (the "Haworth Agreement"). *Id.* ¶56. On or about December 28, 2005, Joseph, at Stuart's direction, wired $100,000 from his personal account at Suffolk Federal Credit Union to a

Bank of America attorney trust account in the name of Steven D. Freesman.[1] *Id.* ¶57. A week later, the Murphys received blueprints for the Haworth Project homes. *Id.* ¶59.

Based on their perception of the "ongoing success of the Haworth Project," the Murphys began discussing a second project with defendants. *Id.* ¶61. Stuart Snyder told Joseph Murphy that the two of them could work on their own project, and that "the Snyders and the Companies could still guarantee the Murphys a twenty percent return on their investment." *Id.* ¶63. Stuart and Joseph located a vacant piece of land on Bible Street in Greenwich, Connecticut, and they agreed to purchase this property and build and a luxury home on the property (the "Connecticut Agreement"). *Id.* ¶¶65-67. The Murphys mortgaged their own home to obtain their portion of the capital, and on August 28, 2006, Joseph wired $275,000 from his personal account at Suffolk Federal Credit Union to a Patriot National Bank account in the name of defendant BBSea Associates LLC. *Id.* ¶¶68-69. The amended complaint states that the Murphys knew Stuart was the president and/or owner of the Companies and understood that they were entering into an agreement with the Snyders and the Companies. *Id.* ¶70. They further allege that the Snyders were personally guaranteeing performance of the Connecticut Agreement. *Id.* Plaintiffs claim that their funds were to be used only in furtherance of the purchase and development of the Bible Street property. *Id.* ¶74. The Snyders and/or the Companies did not purchase the Bible Street property, *Id.* ¶72, and did not return the Murphys' money. *Id.* ¶73. When the Murphys requested the return of their funds, Stuart told them the funds were "stuck in escrow." *Id.* ¶76.

Although part of the Connecticut Agreement was that Joseph would be actively involved

---

[1] Freesman was a named defendant in the original complaint, but plaintiffs' claims against him were voluntarily dismissed with prejudice. *See* DE [18].

in the project, defendants "ousted" him from involvement and converted the funds. *Id.* ¶79. The Snyders continued to state that they were pursuing projects "that would, according to the Snyders, 'definitely get the Murphys back their money and more.'" *Id.* ¶81. The Snyders continued to mislead the Murphys, and finally promised that they would receive their investment "plus profit" upon the sale of one of two home construction projects at 42 Everett Road and 40 Bogert Road in Demarest, New Jersey." *Id.* ¶¶82-84.[2]

The home at 42 Everett Road sold for $3,175,000 and the 40 Bogert Road home sold on June 4, 2010 for $3,075,000. *Id.* ¶¶94-95. In addition, one of the two houses in the Haworth Project sold for $1,400,000 in July 2009; at the time of the filing of the amended complaint, the second was rented out at $9,000 per month and was listed for sale at $1,849,000. *Id.* ¶¶96-97. Neither the Snyders nor the Companies have returned any of plaintiffs' investments or the promised twenty percent return on the investment. *Id.* ¶98. Defendants realized approximately $7,650,000 in sales in 2009 alone. *Id.* ¶101.

The amended complaint states eight causes of action arising from the facts related above. Those claims include two breach of contract claims, conversion, unjust enrichment, fraudulent inducement, money had and received, breach of fiduciary duty, and for an accounting.

## DISCUSSION

### I. DAMAGES AND OTHER RELIEF UPON DEFENDANTS' DEFAULT

Judge Seybert ordered that defendants' answer be stricken and that plaintiffs be awarded a default judgment. The remaining issue is the amount of damages owed to plaintiffs upon

---

[2]Defendants 42 Everett LLC and 40 Bogert Rd LLC were formed for these building projects, and defendants Stuart Snyder, Maisel, and Shirvan are members of the LLCs. Am. Compl. ¶¶85-88.

defendants' default. Although the amended complaint puts forth various theories of recovery, the base amount of damages remains the same – recovery of the $375,000 paid by plaintiffs to defendants. As plaintiffs are clearly not entitled to recover this amount more than once, it may be largely irrelevant which cause of action is deemed the basis for the award.[3] For the purposes of this report, however, I will consider damages under plaintiffs' breach of contract causes of action.

**A. Compensatory Damages**

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). To establish damages upon a default, the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)(citations omitted). Plaintiffs must submit documentary evidence to support an award of the damages sought. *See Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir. 1991). Here, plaintiffs have provided an affidavit from plaintiff Joseph Murphy and various pieces of documentary evidence in support of their claims.

[3]To the extent defendants may have challenged various claims by asserting defenses, the striking of their answer and their default have made any analysis of those defenses unnecessary as "[t]he general rule in federal courts is that a failure to plead an affirmative defense results in a waiver." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1580 (2d Cir. 1994); *see also Countrywide Home Loans, Inc. V. Brown,* 223 Fed.Appx. 13, 14 (2d Cir. 2007) (statute of frauds is a defense that may be waived); *Pino v. United States,* 2004 WL 1320888, at *2 (S.D.N.Y. 2004) (statute of limitations defense is waivable).

As evidence of the $100,000 transfer, plaintiffs have provided a copy of a Domestic Wire Transfer Out document dated December 28, 2005 showing a wire transfer in that amount to defendants' attorney, Steven Freesman. J. Murphy Aff., Ex. B, DE [44-2]. They have also provided a Wire Transfer Advice from Bank of America that confirms Freeman's receipt of a $100,000 transfer from Joseph Murphy on December 28, 2005. *Id.*, Ex. C, DE [44-3]. Regarding the $275,000 transfer, plaintiffs have provided two pieces of documentary proof. First, they have supplied an email dated August 23, 2006 from Kelley Weinstein, the office manager of defendant S&D Contracting, Inc., that is addressed to "Joe" and states in part that "Stuart asked me to e-mail you the following corporate information" and provides bank and routing information for the transfer to BBSea Associated's account at Patriot National Bank. *Id.* Ex. E, DE [44-5]. A Domestic Wire Transfer Out document dated August 28, 2006 shows a wire transfer in the amount of $275,000 from Joseph Murphy to defendant BBSea Asssociated at its Patriot National Bank account. *Id.* Ex. D, DE [44-4]. Upon review of plaintiff Joseph Murphy's affidavit and the exhibits, I find that plaintiffs have satisfactorily supported their claims regarding the two payments and recommend that they recover their initial investments totaling $375,000.

In addition, plaintiffs seek to recover the twenty percent profit or return on their investment that was promised to them. Regarding the Haworth Agreement, plaintiffs allege that Stuart promised that, in exchange for the $100,000 investment, "the Snyders and the Companies could guarantee the Murphys the return of their initial investment <u>plus</u> twenty percent." Am. Compl. ¶53 (emphasis in original). Similar promises were allegedly made during the discussions that led to the Connecticut Agreement, *id.* ¶63, and plaintiffs allege that this investment also was

to have a twenty percent return. *Id.* ¶98. When the construction underlying the Connecticut Agreement did not go forward and defendants used plaintiffs' second investment of $275,000 to fund the building projects in New Jersey, Stuart promised that plaintiffs would receive their initial investment plus profit upon the sale of one of the New Jersey homes. *Id.* ¶84. Based on the uncontested allegations in the amended complaint, it is recommended that plaintiffs be awarded the twenty percent return on their investments that they were promised. Accordingly, plaintiffs should be awarded the $100,000 investment plus twenty percent, $20,000, or $120,000 under the Haworth Agreement, and the $275,000 investment plus twenty percent, $55,000, or $330,000 under the Connecticut Agreement, for a total award of $450,000.[4]

**B. Interest**

"In a diversity case, state law governs the award of prejudgment interest." *Schipani v. McLeod,* 541 F.3d 158, 164-65 (2d Cir. 2008). In an action to recover damages for breach of contract, New York law provides for the recovery of prejudgment interest computed "from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. §5001(b). Taking the allegations of the complaint as true, plaintiffs expected to be repaid their investment in the Haworth Project upon the sale of the properties. Plaintiffs allege that one of those properties was sold in July 2009, Am. Compl. ¶96, and thus their cause of action regarding the $120,000 investment and profit accrued at that time. As to the Connecticut Agreement, it is clear from the amended complaint that although plaintiffs initially intended to invest only in the aborted Bible

[4]Plaintiffs argue that they are entitled to twenty percent interest running from the date the monies were first transferred to defendants. *See* Murphy Aff. The transfers, however, were investments, not loans with accruing interest. The amended complaint clearly suggests that the return on their investment would accrue upon the sale of the homes, and the recommended award herein is consistent with those allegations.

Street project, they acquiesced to Stuart Snyder's "promise" that they would be repaid upon the sale of the Demarest, New Jersey properties. *Id.* ¶¶81-84. Although the amended complaint does not provide the date of the sale of both properties, it does indicate that the 40 Bogert Road property was sold on June 4, 2010. *Id.* ¶¶94-95. Accordingly, I find that plaintiffs' cause of action regarding the $330,000 investment and profit accrued on June 4, 2010. Relying on New York law, plaintiff is entitled to simple interest at New York's statutory rate of 9%. *See* N.Y. C.P.L.R. §5004. Thus, it is respectfully recommended that plaintiffs be awarded prejudgment interest on $120,000 from July 1, 2009 forward, and on $330,000 from June 4, 2010 forward, until the date of judgment.

Additionally, under federal law, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). As an award of post-judgment interest is mandatory, *see Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (citation omitted), the court recommends an award of such interest at the statutory rate prescribed by 28 U.S.C. § 1961(a).

**C. Attorneys' Fees and Costs**

Plaintiffs also seek an award of attorneys' fees, but do not suggest the basis for such an award. Attorneys' fees are not recoverable absent a statute or contractual clause providing for them. *See generally Hooper Assocs. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 366 (1989) (under New York law, "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule"). The amended complaint does not allege that either of the oral agreements provided for the recovery of attorneys' fees by a non-breaching party. As

plaintiffs have provided no evidence warranting a departure from the "American Rule" that each party bears the cost of its own attorneys' fees, it is recommended that no attorneys' fees be awarded in this case.

Plaintiffs are entitled to costs other than attorneys' fees pursuant to Rule 54 (d) of the Federal Rules of Civil Procedure. Although plaintiffs have not provided any documentation in support of costs, I take judicial notice of the $350.00 filing fee and recommend an award of that amount as a cost.

**D. Punitive Damages**

Finally, plaintiffs seek an award of punitive damages as part of their recovery under their causes of action for conversion, fraudulent inducement, and breach of fiduciary duty. As mentioned *supra*, plaintiffs have failed to provide any legal memorandum in support of their claims. Indeed, the papers submitted by plaintiffs do not ask for the assessment of punitive damages let alone suggest an appropriate amount.

In general, punitive damages may be appropriate under New York law where defendants have engaged in "gross, wanton, or willful fraud or other morally culpable conduct." *Action S.A.,* 951 F.2d at 509 (citations omitted). Such damages are not available "for the 'ordinary' case of fraud," *Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 371 (2d Cir. 1988), but rather are appropriate "where the fraud alleged 'is gross and involves high moral culpability.'" *Colavito v. New York Organ Donor Network, Inc.,* 356 F. Supp. 23d 237, 240 (E.D.N.Y. 2005) (quoting *Shanahan v. Vallat,* 3004 WL 2937805, at *11 (S.D.N.Y. Dec. 19, 2004)). Examination of the facts here compels the conclusion that these defendants "do not appear to have acted with greater moral culpability than is involved in an 'ordinary' fraud case." *Shanahan,* 3004 WL 2937805, at

*12.

In addition to cases of gross fraud, however, "[p]unitive damages may also be appropriate where the parties' relationship was fiduciary or confidential." *Marketing Dev., Ltd. v. Genesis Import & Export, Inc.,* 2009 WL 4929419, at *9 (E.D.N.Y. Dec. 21, 2009) (citing *H&R Indus., Inc. v. Kirshner,* 899 F. Supp. 995, 1012 (E.D.N.Y. 1995)). Plaintiffs argue that the Snyders owed them a fiduciary duty "[b]y virture of their close relationship and agreements to enter into business ventures." ¶174. New York law provides that "[a] fiduciary relation exists between two persons when one of them is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation." *Bank of America Corp. v. Lemgruber,* 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005) (quoting *Mandelblatt v. Devon Stores Inc.,* 132 A.D.2d 162, 168 (1st Dep't 1987) (quoting Rest. 2d of Torts §874, cmt. a)). The facts alleged establish that Stuart Snyder, an established developer, used his family connection as Joseph Murphy's brother-in-law to induce Murphy, a retired firefighter, to invest significant sums of money in Snyder's ventures, and that the Murphys relied upon and trusted this family relationship in making their decision. Under these circumstances, I find that Stuart Snyder breached a fiduciary duty to the Murphys and recommend that an award of punitive damages in the amount of $37,500 be assessed against him.[5]

## II. Sanctions

Plaintiffs were previously awarded sanctions of $200, plus attorneys' fees of $2,513, for a total award of $2,713. *See* Orders of 5/19/11 DE [34], 6/29/11 DE [37] and 8/4/11 DE [41]. As

[5] As mentioned *supra,* plaintiffs have not suggested an appropriate amount for a punitive damages award. I determined the recommended amount as 10% of the original $375,000 investments made by plaintiffs.

defendants have apparently not paid these amounts despite an order directing them to do so, it is recommended that this amount be added to the judgment.[6]

**CONCLUSION**

For the foregoing reasons it is recommended that plaintiffs be awarded the following amounts against all defendants:

- Damages in the amounts of $120,000 and $330,000 for a total of $450,000;
- Prejudgment interest on $120,000 from July 1, 2009 through the date of judgment and on $330,000 from June 4, 2010 through the date of judgment;
- Costs in the amount of $350;
- Previously awarded sanctions in the total amount of $2,713; and
- Post-judgment interest.

In addition, it is recommended that punitive damages in the amount of $37,500 be awarded against defendant Stuart Snyder.

**OBJECTIONS**

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, 2008 WL 4951035 at *2 (2d Cir. Nov. 20, 2008); *Beverly*

---

[6] Plaintiffs have moved separately for an order of contempt regarding defendants' failure to comply with Judge Wall's order directing payment of the sanctions. *See* DE [46]. In light of the recommendation regarding inclusion of the sanctions in the default judgment, that motion will be terminated as moot upon entry of this report.

*v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
March 28, 2012

/s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge