**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
JOHN J. MURPHY and NANCY MURPHY,

                        Plaintiffs,

               -against-

STUART SNYDER, DOREEN SNYDER, BBSEA ASSOCIATES, LLC, S&D DEVELOPMENT, LLC, S&D DEVELOPMENT, INC., MICHAEL MAISEL, NEIL SHIRVAN, 40 BOGERT RD LLC, 42 EVERETT LLC, and S&D CONTRACTING, INC.,

                       Defendants.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 10-1513 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    **PRELIMINARY STATEMENT**

Plaintiffs John and Nancy Murphy ("Plaintiffs") commenced this action nearly a decade ago to recover damages from Stuart and Doreen Snyder (the "Snyder Defendants"), and several corporate entities (collectively, "Defendants"), for the alleged conversion of $375,000 of Plaintiffs' money. *See generally* Amended Complaint ("Am. Compl.") [DE 26]. Put simply, Plaintiffs entered into two investment agreements with the Snyder Defendants in which Plaintiffs agreed to pay a total of $375,000 in connection with residential real estate projects in New Jersey and Connecticut. *See id.* Plaintiffs alleged that they were to receive twenty (20) percent returns on their investment pursuant to the agreements. *See id.* However, rather than receive a return on their investment, Plaintiffs claimed their funds were converted by Defendants for personal use. *See id.* On September 22, 2014, Judge Seybert adopted this Court's Report and Recommendation that Plaintiffs' motion to strike Defendants' Amended Answer [DE 121] be

granted and that a default judgment be entered against Defendants for their repeated failure to comply with their discovery obligations and the Court's orders.  *See* DE 135.  The Clerk of the Court entered the default judgment against the Defendants the following day for compensatory damages in the sum of $450,000 plus pre- and post-judgment interest and costs.  *See* DE 136.

On October 9, 2018, Plaintiffs filed a motion to hold the Snyder Defendants in contempt and to impose appropriate sanctions for their alleged failure to comply with post-judgment subpoenas.  *See generally* Plaintiffs' Memorandum in Support of their Motion for Contempt ("Pls.' Mem.") [DE 137-12]; Plaintiff's Memorandum in Reply ("Pls.' Reply") [DE 141].  The Snyder Defendants filed opposition to Plaintiffs' motion in which they primarily argue that they have complied with the subpoenas by way of documents produced in a separate action.  *See generally* Defendants' Memorandum in Opposition ("Defs.' Opp'n.") [DE 139].  Judge Seybert referred Plaintiffs' motion for contempt to this Court for a Report and Recommendation as to whether the motion should be granted and what if any sanctions should be imposed.  *See* Electronic Order of October 11, 2018.  For the reasons set forth below, the Court recommends to Judge Seybert that Plaintiffs' motion for contempt be converted to a motion to compel compliance with the subpoenas, and that such motion be granted.

## II. RELEVANT BACKGROUND

The Court has previously set forth at length the factual and procedural background of this action.  Of particular note is this Court's August 15, 2014 Report and Recommendation to Judge Seybert recommending that Plaintiffs' motion for default judgment and damages be granted.  *See* DE 133.  That Report and Recommendation reviewed the procedural history of this action – including the Defendants' history of non-compliance with court orders – as well as the sufficiency and merit of the factual allegations underlying Plaintiffs' claims.  *See id*.  The Court

therefore assumes the parties' familiarity with the history of this case and provides only the relevant procedural background necessary to the determination of the pending motion.

Plaintiffs commenced this action nearly a decade ago on April 6, 2010. *See* DE 1. An Amended Complaint was filed on December 27, 2010, which remained the operative pleading through the entry of default judgment. *See generally* Am. Compl. The Amended Complaint asserted claims for (1) breach of contract, (2) conversion, (3) unjust enrichment, (4) fraudulent inducement, (5) money had and received, (6) breach of fiduciary duty, and (7) an accounting. *See id*. As noted, Plaintiffs' claims arose from two investment agreements pursuant to which Plaintiffs conveyed significant sums of money to Defendants in expectation of a twenty percent rate of return, only to have Defendants convert Plaintiffs' money for personal use. *See id*.

Throughout 2011, Defendants failed to comply with multiple court orders pertaining to their discovery obligations, resulting in a July 28, 2011 Report and Recommendation from Magistrate Judge Wall[1] to Judge Seybert recommending that the Defendants' Amended Answer be stricken and a default judgment be entered against the Defendants, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(iii). *See generally Murphy v. Snyder*, No. CV 10-1513, 2011 WL 4345088 (E.D.N.Y. July 28, 2011) [DE 40], *report and recommendation adopted*, No. 10-CV-1513, 2011 WL 4441487 (E.D.N.Y. Sept. 15, 2011). On September 15, 2011, Judge Seybert adopted Judge Wall's Report and Recommendation in its entirety and entered a default judgment against all Defendants. *See Murphy v. Snyder*, No. 10-CV-1513, 2011 WL 4441487, at *1 (E.D.N.Y. Sept. 15, 2011) [DE 43]. Moreover, Judge Seybert directed Plaintiffs to submit evidence in support of their requested damages to Judge Wall within 45 days, which Plaintiffs did. *See id*; *see also* DE 44.

---

[1] Magistrate Judge William D. Wall was the Magistrate Judge initially assigned to this case.

On November 17, 2011, this case was reassigned to Magistrate Judge Gary Brown. *See* Electronic Order of November 17, 2011. In a March 28, 2012 Report and Recommendation, Judge Brown recommended that Plaintiffs be awarded the following damages: (1) $120,000 and $330,000 against all Defendants for the two investment agreements, respectively, for a total of $450,000; (2) pre-judgment interest against all Defendants on the $120,000 from July 1, 2009 through the date of judgment and on $330,000 from June 4, 2010 through the date of judgment; (3) costs in the amount of $350 against all Defendants; (4) previously awarded sanctions in the total amount of $2,713 against all Defendants; (5) post-judgment interest against all Defendants; and (6) punitive damages in the amount of $37,500 against Defendant Stuart Snyder. *See Murphy v. Snyder*, No. 10 Civ. 1513, 2012 WL 4483025, at *6 (E.D.N.Y. Mar. 28, 2012) [DE 47].

In April 2012, the Snyder Defendants, along with BBSea Associates, LLC, 40 Bogert Rd LLC, 42 Everett LLC, and S&D Contracting Inc. retained new counsel who moved to vacate the default judgment and filed an objection to the March 28, 2012 Report and Recommendation, arguing that prior counsel had abandoned the case. *See* DE 60-78. Counsel for Defendants Michael Maisel and Neil Shirvan also objected to the Report and Recommendation and moved to vacate the default judgment on the same grounds. *See* DE 50-55. On May 7, 2012, Judge Seybert referred all pending motions to vacate the default judgments to Magistrate Judge Brown for a Report and Recommendation as to "whether the pending motions should be granted, and to amend or supplement the prior Report and Recommendation (docket entry [47])" on damages issued by Judge Brown on March 28, 2012. DE 67. Before issuing a Report and Recommendation, Judge Brown recused himself and the matter was reassigned to this Court. *See* Electronic Order of July 12, 2012.

4

On March 8, 2013, this Court issued a Report and Recommendation to Judge Seybert recommending the following actions: (1) that Defendants' motions to vacate the default judgments be granted; (2) that the Court set aside as moot Judge Brown's March 28, 2012 Report and Recommendation; (3) that the Snyder Defendants' motion to amend be denied; and (4) that the sanctions previously awarded by Judge Wall in the amount of $2,713 be enforced as a condition to vacating the Defendants' default judgment. *See Murphy v. Snyder,* No. 10 Civ. 1513, 2013 WL 934603, at *22 (E.D.N.Y. Mar. 8, 2013) [DE 95], *adopted by* 2013 WL 1335757 (E.D.N.Y. Mar 29, 2013). On March 29, 2013, Judge Seybert adopted this Court's Report and Recommendation in its entirety over Defendant Shirvan's objection to the award of sanctions. *See generally Murphy v. Snyder*, No. 10-CV-1513, 2013 WL 1335757 (E.D.N.Y. Mar. 29, 2013) [DE 101].

On April 9, 2013, counsel for the Snyder Defendants, BBSea Associates, LLC, 40 Bogert Rd LLC, 42 Everett LLC, and S&D Contracting Inc., were granted leave to withdraw as counsel. *See* DE 103. During a telephone conference on April 12, 2013, the corporate Defendants were advised that they could not proceed *pro se*, and were given 30 days to retain new counsel. *See* DE 104. The Court further advised Stuart Snyder, who had an ownership interest in the corporations, that failure to retain counsel for the corporate entities would likely result in default judgments being entered against them. *See id.* No new counsel ever appeared in this action on behalf of the corporate entities.

The Court issued a Case Management and Scheduling Order on June 6, 2013 which re-set discovery deadlines. *See* DE 109. Pursuant to the discovery schedule set by the Court, Plaintiffs' counsel served discovery requests on Defendants; however, these requests, like the multiple requests before, went unanswered by Defendants. As a result of the Snyder Defendants'

5

continued failure to fulfill their discovery obligations and the corporate entities' failure to retain counsel, the Clerk of the Court, at the request of Plaintiffs' counsel, issued a Certificate of Default on October 9, 2013 for the Snyder Defendants, BBSea Associates, LLC, 40 Bogert Rd LLC, 42 Everett LLC, and S&D Contracting Inc. *See* DE 116.

On October 31, 2013, Plaintiffs filed their motion (1) to strike the Amended Answer filed by both the Snyder Defendants and the corporate Defendants, and (2) to have the Court enter a default judgment against all Defendants pursuant to Rule 37. *See* DE 121. Judge Seybert referred Plaintiffs' motion to this Court on November 4, 2013 for a Report and Recommendation. *See* DE 123. Defendants Neil Shirvan, Michael Maisal, and S&D Development LLC were dismissed from this action in November 2013. *See* DE 126-131. On August 15, 2014, this Court issued its Report and Recommendation to Judge Seybert recommending that (1) Plaintiffs' motion be granted, (2) the Amended Answer of the Snyder Defendants and the corporate Defendants be stricken, and (3) a default judgment be entered against all Defendants on Plaintiffs' breach of contract claim. *See* DE 133. As to damages, the Court recommended that compensatory damages in the amount of $450,000 be awarded for the Defendants' breach of the two investment agreements ($120,000 and $330,000, respectively), and that pre-judgment interest, post-judgment interest, and costs in the amount of $350 be awarded. *See id*. On September 22, 2014, Judge Seybert adopted this Court's Report and Recommendation in its entirety, *see* DE 135, and the case was closed the following day. *See* DE 136.

No further activity took place under the instant docket number until October 9, 2018, when Plaintiffs filed their motion for contempt. *See* DE 137. Defendants filed their opposition shortly thereafter and the motion was referred by Judge Seybert to this Court for a Report and

Recommendation as to whether the motion should be granted. *See* Electronic Order of October 11, 2019.

### III.   THE PARTIES' POSITIONS

#### A.   Plaintiffs' Motion

In addition to the procedural history outlined above, in their motion papers Plaintiffs provide some additional background which they claim is relevant to their motion. According to Plaintiffs, after judgment was entered against Defendants in this case, the Superior Court for the State of Connecticut entered a judgment by strict foreclosure on October 27, 2014 in connection with a mortgage foreclosure proceeding against the Defendants titled *Farmington Bank v. Stuart Snyder et al.*, Docket No. FST-CV 13-6018602-S. *See* Pls.' Mem. at 2 (citing Ex. 3. in support of Plaintiffs' Motion for Contempt). Shortly thereafter, on November 18, 2014, the civil judgment in the instant case was registered by Plaintiffs in the United States District Court for the District of Connecticut in an action entitled *Murphy v. Snyder*, No. 3:14-MC-135 (VLB). That filing resulted in a lien against the Defendants' residence. *See* Pls.' Mem. at 2-3 (citing Ex. 4 in support of Plaintiffs' Motion for Contempt). A foreclosure sale of Defendants' property was scheduled to take place on April 28, 2015; however, on April 23, 2015, Defendants filed a voluntary Chapter 11 bankruptcy petition. *See* Pls.' Mem. at 3 (citing Ex. 5 in support of Plaintiffs' Motion for Contempt). Plaintiffs state that they successfully moved in the bankruptcy proceeding to have the civil judgment declared non-dischargeable. The Bankruptcy Court found, among other things, that the judgment was non-dischargeable on the grounds of breach of fiduciary duty, embezzlement, and willful and malicious injury. *See* Pls.' Mem. at 3 (citing Ex. 6 in support of Plaintiffs' Motion for Contempt).

7

Having provided this background, Plaintiffs state that in 2017 they learned that the Snyder Defendants were preparing to finance a "lavish" wedding for their daughter in the Hamptons area of New York. Pls.' Mem. at 3. Plaintiffs served a subpoena upon the wedding planner to learn how the Snyder Defendants, whom they state "repeatedly proclaimed their poverty to the Bankruptcy Court," were able to afford such an affair. *Id*. Defendants moved to quash the subpoena on the grounds that it would cause embarrassment in connection with the wedding. *See id*. Plaintiffs maintain that although they successfully opposed the motion, they could not get a ruling until after the wedding occurred and the money was spent. *See id*.

According to the instant motion, Plaintiffs then served a subpoena on a bank that paid a check to the wedding planner from an account in the name of Greenwich Development Group, LLC ("Greenwich"). Pls.' Mem. at 3. The subpoena sought information about accounts controlled by the Snyder Defendants. *Id*. In response to the subpoena, Plaintiffs state that the bank produced records related to accounts in the name of Greenwich Development Group, LLC and Hudson Valley Spray Foam LLC ("Hudson Valley"), both of which Plaintiffs believe to be controlled by Defendant Stuart Snyder. *Id.* at 4. These records "revealed that Defendants have engaged in a continuous scheme where Defendants comingled [*sic*] funds for person[al] use with the funds of" Greenwich and Hudson Valley so as to avoid their obligations to creditors. *Id*. As a result of this scheme, Plaintiffs state that they were forced to file yet another action in the United States District Court for the District of Connecticut on July 18, 2018, alleging fraud with regard to the Snyder Defendants and the numerous companies the Defendants have created to conceal assets. *See id*.

On June 27, 2018, Plaintiffs executed and served subpoenas upon the Snyder Defendants in an attempt to elicit testimony and/or documents substantiating any assets held by the Snyder

8

Defendants which could be used to satisfy the civil judgment in this action. *See* Pls.' Mem. at 4. The subpoenas specified that the deposition of the Snyder Defendants was to take place on July 31, 2018, and that the Defendants were to produce certain documents on that date. *See id*. Plaintiffs claim that on July 24, 2018, Defendant Stuart Snyder acknowledged receipt of the subpoenas and requested a postponement of the July 31 date until the end of August, purportedly to retain counsel in New York and to gather documents. *See id.* at 5. Plaintiffs' counsel granted the requested extension on the condition that Defendants respond to the subpoenas before a scheduled mediation on August 23, 2018. *See id*. Plaintiffs state that they never received a single document, nor did the Snyder Defendants appear for depositions despite "Plaintiffs' counsel following up with Defendants numerous times between July 30, 2018 and August 22, 2018." *Id*. Likewise, Defendants never moved to quash the subpoenas. *Id*. The instant motion for contempt was filed as a result of the Snyder Defendants alleged failure to comply with Plaintiffs' subpoenas.

Plaintiffs' argument is straightforward: "Defendants' failure to obey the duly executed Subpoenas is the most recent illustration of what has been a concerted effort to prevent Plaintiffs from collecting on the Civil Judgment which was entered" in 2014. Pls.' Mem. at 7-8. Plaintiffs contend that the circumstances surrounding the Defendants' continued pattern of behavior satisfy the "three essential elements which must be established before a party can be held in civil contempt: 1) [ ] an order that is 'clear and unambiguous,' 2) [ ] proof of non-compliance with that order [that is] 'clear and convincing,' and 3) [evidence] that the contemnor has not 'been reasonably diligent and energetic in attempting to accomplish what was ordered." *Id*. at 7 (internal quotation marks and citations omitted).

9

### B. Defendants' Opposition

In opposing the motion, the Snyder Defendants argue that the documents sought in Plaintiffs' subpoenas have already been provided in the Connecticut action which registered the civil judgment in this case. Defendants contend that "[p]ost-judgment discovery proceedings concerning Defendants and non-parties since 2014 have occurred exclusively in Connecticut, where Defendants reside and the default judgment was entered with a case number assigned in 2014. No papers had been served or filed in the above captioned New York action over the past four years." Defs.' Opp'n. at 1. According to Defendants' counsel, "[d]uring these Connecticut proceedings, document demands were served upon Defendants, and <u>timely responses were provided</u> by their attorneys in February 2018 without subsequent objection by Plaintiffs." *Id*. (emphasis in original). Defendants state the document demands with which the subpoenas in this case were concerned were identical to those served in the Connecticut action, which Defendants responded to several months earlier. *Id*. They contend that "Stuart Snyder has represented that Defendants are available to proceed with depositions," and "[b]ased upon Defendants' prior document production in response to the identical demands, Plaintiffs cannot demonstrate noncompliance by Defendants." *Id*. at 2. Moreover, Defendants intimate that Plaintiffs' motion for contempt was strategically filed in the New York action, observing that the "motion fails to explain why the subpoenas were issued in the New York action where they knew Defendants did not have counsel." *Id*. at 2.

## IV. DISCUSSION

### A. Legal Principles

#### 1. *Contempt under Rule 45*

Pursuant to Federal Rule of Civil Procedure 45, an attorney "may issue and sign a subpoena if the attorney is authorized to practice in the issuing court." FED. R. CIV. P. 45(a)(3). "If a commanded party 'fails without adequate excuse to obey the subpoena,' the court may hold that party in contempt." *Sheet Metal Workers' Nat'l Pension Fund v. Rhb Installations, Inc.*, No. CV 12-2981, 2016 WL 128153, at *2 (E.D.N.Y. Jan. 12, 2016) (quoting FED. R. CIV. P. 45(g)). In order for a court to hold a party in contempt for failure to comply with a subpoena, it must be demonstrated that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995). It need not be established that the violation was willful." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (quoting *Donovan v. Sovereign Sec. Ltd.,* 726 F.2d 55, 59 (2d Cir. 1984)).

"Although Rule 45(g) permits a court to hold a person in contempt for failure to obey a subpoena 'without adequate excuse,' 'courts in the Second Circuit have often held that . . . a court should first issue an order compelling compliance with the subpoena.'" *Kerr v. Thomas*, No. 14 CIV 9168, 2017 WL 485041, at *4 (S.D.N.Y. Feb. 3, 2017) (quoting *In re Application of Kingdom of Morocco*, M8-85, 2009 WL 1059786 at *2 (S.D.N.Y. Apr. 16, 2009)), *report and recommendation adopted sub nom. Kerr v. John Thomas Fin.*, 2017 WL 1609224 (S.D.N.Y. May 1, 2017); *see Sheet Metal Workers' Nat'l Pension Fund*, 2016 WL 128153, at *2 ("[I]n civil litigation, it [is] rare for a court to use contempt sanctions without first ordering compliance with

11

a subpoena.") (alteration in original) (citing Advisory Committee Notes to 2013 Amendment to FED. R. CIV. P. 45)); *Deleon v. Pichardo*, No. 15 CV 9804, 2016 WL 7373965, at *2 (S.D.N.Y. Dec. 12, 2016) (same). The reason for this approach stems from the fact that "[a]n order of contempt leading to the impositions of sanctions is a drastic remedy." *Kerr*, 2017 WL 485041, at *4 (quoting *Sanchez v. Pathmark Stores, Inc.*, 04 Civ. 1159, 2009 WL 398103 at *1 (S.D.N.Y. Feb. 17, 2009) (internal quotation marks omitted)); *see Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010) ("[A] contempt order is . . . a potent weapon, to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct.") (internal quotation marks omitted)).

### 2.  *Post-Judgment Discovery*

"After entering a judgment, a district court retains ancillary jurisdiction to ensure the judgment's execution." *First Tech. Capital, Inc. v. Airborne, Inc.*, No. 6:15-CV-06063, 2019 WL 2205709, at *2 (W.D.N.Y. May 21, 2019). Indeed, "[b]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590, 2013 WL 57892, at *1 (S.D.N.Y. Jan. 4, 2013) (quoting *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012)); *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.,* 10 Civ. 1853, 11 Civ. 2001, 2012 WL 4801452 at *11 (S.D.N.Y. Oct. 5, 2012) ("Rule 69(a)(2) allows a judgment creditor to utilize discovery devices available under both the Federal Rules of Civil Procedure and the laws of the forum state."); *GMA Accessories, Inc. v. Elec. Wonderland, Inc.,* 07 Civ. 3219, 2012 WL 1933558 at *4 (S.D.N.Y. May 22, 2012) ("In its efforts to enforce a judgment, the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.") (internal quotations and citations omitted). Therefore, and critical to Plaintiffs' motion, "Rule 45 of the Federal Rules of

Civil Procedure applies in post-judgment discovery and authorizes a party's attorney to issue both document and deposition subpoenas." *Universitas Educ., LLC*, 2013 WL 57892, at *2.

### B.  Application to the Facts

The Court first addresses Defendants' argument that Plaintiffs' motion for contempt should be denied, at least in part, because their motion for contempt was filed in the New York action, and "[p]ost-judgment discovery proceedings concerning Defendants and non-parties since 2014 have occurred exclusively in Connecticut, where Defendants reside and the default judgment was entered with a case number assigned in 2014.  No papers had been served or filed in the above captioned New York action over the past four years." Defs.' Opp'n. at 1.  As a general matter, where Plaintiffs have registered their judgment does not affect if and how *this* Court should address a post-judgment discovery motion in aid of execution.  In *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590, 2013 WL 57892 (S.D.N.Y. Jan. 4, 2013), Magistrate Judge Pitman dealt with facts similar to those in the instant case, although presented in the context of a *non*-party's motion to quash a post-judgment subpoena in aid of execution. In *Universitas Educ., LLC*, Judge Pitman stated as follows:

> As a factual matter, Universitas has registered its judgment in the District of Connecticut.  As a legal matter, the registration of the judgment is immaterial to Universitas' subpoena to Mr. Trudeau. After judgment has been entered, a federal court retains jurisdiction, including its subpoena power, to enforce that judgment. FED. R. CIV. P. 69(a); *see Zeiler v. Deitsch,* 500 F.3d 157, 170 (2d Cir. 2007) ("Once confirmed, [arbitration] awards become enforceable court orders, and when asked to enforce such orders, a court is entitled to require actions to achieve compliance with them."). In other words, the court's subpoena power in post-judgment discovery is not limited to the jurisdiction in which the judgment creditor has registered the judgment. Therefore, Universitas' registration of the judgment has no impact on the effectiveness of the subpoena, nor on Mr. Trudeau's obligation to comply with it.

13

*Id*. at *4 (internal citations omitted).  Accordingly, to the extent that Defendants argue that the venue of Plaintiffs' motion (*i.e*, here in New York in the original action as opposed to Connecticut in the action under which the judgment is registered) alone provides sufficient grounds to deny the motion, their argument is without merit.

In light of the fact that the Eastern District of New York retains jurisdiction over the action in all relevant respects and is capable of adjudicating Plaintiffs' post-judgment motion for contempt, the question next becomes whether the circumstances here warrant a finding of contempt pursuant to Rule 45.  As noted above, in order to hold a party in contempt for failure to comply with a subpoena, it must be established that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of non-compliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.  *King*, 65 F.3d at 1058.  However, the weight of authority in this Circuit is clear that in most circumstances, courts should decline to hold a party in contempt for failure to comply with a subpoena prior to issuing an order compelling such compliance.  *See Kerr*, 2017 WL 485041, at *4.  This Court has not issued an order compelling compliance with the Plaintiffs' June 27, 2018 subpoenas, nor have Plaintiffs sought one.[2]  Therefore, the Court declines to recommend to Judge Seybert that an order of contempt be issued at this time.  Rather, this Court recommends to Judge Seybert that Plaintiffs' motion for contempt be converted to a motion to compel compliance with the subpoenas.  *See Sheet Metal Workers' Nat'l Pension Fund*, 2016 WL 128153, at *1 ("[T]he Court finds that plaintiffs' motion for contempt is premature and treats plaintiffs' motion as a motion to compel, which is granted.").  Should Judge Seybert adopt this recommendation, the Court further

---

[2]  The Court credits Defendants' argument that the documents sought in the June 27, 2018 subpoenas are identical to those requested and, in some capacity, previously responded to by the Snyder Defendants without objection by Plaintiffs.  Plaintiffs fail to address this argument in any meaningful way in their reply brief.

14

recommends that such motion be granted. The conversion and granting of the motion would also appear to be the best chance for Plaintiffs to obtain the information they seek in an expeditious manner.

In light of the Defendants' track record of non-compliance and the length of time since the judgment against the Defendants issued, the Court makes the further recommendation that counsel for Plaintiffs and the Snyder Defendants confer with one another and, within one week of Judge Seybert's decision on this Report and Recommendation if the Report and Recommendation is adopted, inform the Court of a mutually agreed upon date for the depositions of Stuart and Doreen Snyder and the production of documents pursuant to the June 27, 2018 subpoenas. To the extent Defendants' counsel maintains that the documents set forth in the subpoenas have already been produced in the Connecticut action, there should be no delay in providing copies of these documents to Plaintiffs' counsel.

## V.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that (1) Plaintiffs' motion for contempt be converted to a motion to compel compliance with the subpoenas duly executed and served on June 27, 2018, and (2) the motion to compel be GRANTED.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert. Any requests for an extension**

**of time for filing objections must be directed to Judge Seybert prior to the expiration of the 14-day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
August 6, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge